IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Cockett Marine Oil US, Inc., | ) |
| | ) |
|    Plaintiff, | ) |
| | ) Civil Action No.: 24-cv-640-MN |
| v. | ) |
| | ) IN ADMIRALTY |
| Bravo Global Supply LLC, | ) |
| | ) |
|    Defendant, *et al.* | ) |

**COCKETT MARINE OIL US, INC.'S RESPONSE**
<u>**OPPOSING BRAVO'S EXTENSION MOTION**</u>

    Cockett Marine Oil US, Inc., ("Cockett") responds to this Court's Oral Order (D.I. 49, 12:23 p.m. today) following Bravo Global Supply LLC's ("Bravo") 10:48 a.m. today (D.I. 48) Emergency motion for a two- week time extension – to file the motions which this Court (D.I. 47, October 29, 2024) gave Bravo 10 further days to file – by tomorrow, November 8th.

    This Court now should deny the extension request.

    Bravo – by its sole owner and employee/owner, Chris Brooks' – who is the stepson of Bravo's lead counsel / *pro hac vice* Jim Winton - has by repeated misstatements to Cockett - delayed and put off paying Cockett for over a year.[1]

    Now, Bravo threatens – *__please see further below__* – after all it its (Chris Brooks') delays for over a year – that Bravo is **<u>imminently</u>** going to file for bankruptcy. Among other things,

---

[1]     Given the close family relationship between Chris Brooks and his stepfather – Jim Winton, lead counsel *pro hac vice* now for Bravo (and Mr. Winton's significant admiralty law experience, detailed herein), this Court should ask Mr. Winton how long he knew of Cockett's May 30, 2024 suit – served personally on Chris Brooks June 8, 2024 (D.I. 16) against Bravo and Bravo's default – before –entering the case and now, requesting **<u>further delay</u>** - - for a house move that Mr. Winton must have known of, months before (that – he certainly knew of October 29, 2024 when this Court set the November 8th briefing deadline).

after being misdirected for over a year, Cockett cannot agree to any further delay given Bravo's announced, imminent bankruptcy filing.

Bravo took Cockett's marine fuel - sold it – and used the money including, apparently to pay others (but not Cockett).  The put off and delay has been through **a series of lies**:

- First, Chris Brooks told Cockett – for months - he couldn't pay because Bravo customer Eddison Chouest hadn't paid Bravo.  Said Chris Brooks, this was because of issues with the customer's "new system."   But the truth was, that the customer had paid Cockett long before.

    **Bravo admits this**:  *see* Bravo's Answer (D.I. 44, ¶14-18) and Cockett's Complaint, ¶14-18.

- Cockett confronted Chris Brooks when Cockett found out that the customer had long ago paid Bravo.

    So, Chris Brooks (March, 2024) told Cockett that he was selling his house in Texas (where Bravo is – or was – incorporated) - and that he'd use the proceeds to pay Cockett.

    **Bravo admits this**:  *see* Bravo's Answer (D.I. 44, ¶18-19) and Cockett's Complaint (¶17-18).

- This went on for months – Chris Brooks insisted that the housing market was slow, and that he'd pay Cockett as soon as he sold the Texas house.  But, while he was telling this to Cockett, he was buying a $700,000 house in Santa Rosa Beach, Florida – and moving.

- Cockett had the Texas land records searched, though – and saw that Chris Brooks and his wife had sold the Texas house, and moved – with Cockett getting nothing.  Cockett sued here, May 30, 2024 (D.I. 1), garnishing the Bravo Wells Fargo account.

- Just after Cockett filed suit, Chris Brooks June 10, 2024 separately incorporated another same-as-the-Texas/ defendant named "Bravo Global Supply LLC" in Florida.[2]

---

[2] The Florida corporate records of Bravo's opening a new, Florida LLC of the same name as the Texas LLC are accessible at: https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=BRAVOGLOBALSUPPLY%20L240002565960&aggregateId=flal-l24000256596-b2551e0a-8378-41c8-afe2-0f381140ec4f&searchTerm=Bravo%20global&listNameOrder=BRAVOGLOBAL%20L170002631410, filing at https://search.sunbiz.org/Inquiry/CorporationSearch/ConvertTiffToPDF?storagePath=COR%5C2024%5C0610%5C30723078.Tif&documentNumber=L24000256596

**Bravo admits this**: *see* Bravo's Answer (D.I. 44, ¶18-19) and Cockett's Complaint (¶17-18).

- Cockett served Chris Brooks personally with the 21-day summons, and complaint – in Florida, June 8, 2024 (D.I. 16) and on the Texas LLC/ defendant by the Texas Secretary of State June 5, 2024 (D.I. 15 - Chris Brooks no longer in Texas, but the defendant registered there).

**What else Bravo has not told this Court, but should have**:

- **Bravo and Cockett's Pre-Conference Communications about the Briefing Schedule**: Bravo and Cockett counsel exchanged a number of messages about the briefing, and further any further delay of the case – well before the Wednesday, November 6th counsel phone conference. *See* the emails collected in **Exhibit A hereto** (discussions re settlement, redacted from each exhibit). Never before November 1st (after this Court October 29th set the briefing schedule for November 8th) did anyone and the news came through Bravo's bankruptcy counsel) that Bravo's lead counsel, Mr. Winton, was moving and that he (or colleagues of BakerHostetler, his over 1000 lawyer firm)[3] therefore would be unable to meet this Court's November 8, 2024 filing requirement.

- Bravo at least as of October 24, 2024 retained bankruptcy counsel. Bravo threatens the "**imminent necessity of a bankruptcy filing**." Direct quote from Bravo bankruptcy counsel Natasha Revell letter to Cockett and other counsel, November 1, 2024, **Exh. B hereto**; *see also* the emails collected in **Exhibit C hereto**.

---

[3]  Mr. Winton – who is Bravo owner Chris Brooks' stepfather - is a very experienced maritime lawyer - Mr. Winton's cv, at https://www.law.uh.edu/faculty/adjunct/cv/winton.pdf.

"BakerHostetler is one of the largest law firms in the U.S., with more than 1,000 lawyers and 17 offices across the country[,]" https://www.bakerlaw.com/about-us/overview/ , including six practicing admiralty and maritime law (https://www.bakerlaw.com/professionals/?practice=Maritime+and+Admiralty ) and seven in its Wilmington office ( https://www.bakerlaw.com/professionals/?office=Wilmington)

- Cockett lead counsel J. Stephen Simms and Bravo's lead counsel now out-from-retirement BakerHostetler partner James Winton have been in conversation for nearly a month about Bravo's default – since Mr. Winton wrote October 14th, 2024 – including about Bravo's admitted failure to pay Cockett what Bravo owes Cockett.

After Bravo – improperly[4] - answered October 21, 2024 – Bravo was able to further delay. This Court October 22, 2024 (D.I. 45) ordered the parties to consult and by October 25,

---

[4] This Court (Judge Fallon) in *S. Afr. Bunkering & Trading Ltd. v. Labpro Pharma LLC*, No. CV 21-866-LPS-SRF, 2022 WL 605309, at *1 (D. Del. Jan. 31, 2022), *report and recommendation adopted*, No. CV 21-866-LPS-SRF, 2022 WL 1051387 (D. Del. Feb. 18, 2022) writes as follows:

> "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Here, Defendants did not file any form of responsive pleading until after SABT filed its request for entry of default noting that the time for Defendants to respond had expired. For this reason alone, the entry of default under Rule 55(a) is appropriate. *See Securian Life Ins. Co. v. Dawson*, C.A. No. 17-1259-VAC-SRF, 2018 WL 3019107, at *2 (D. Del. June 18, 2018) (concluding that entry of default under Rule 55(a) was proper because untimely answer did not "offer an acknowledgement or explanation for the late submission[,]" and "filing an answer does not vacate the default in appearance" absent a showing of good cause under Rule 55(c)). In addition to being procedurally improper for the reasons stated at § II.A, supra, the answer filed by Defendants was not accompanied by a request for extension of time to file a responsive pleading or any refutation of SABT's request for entry of default indicating that the time for filing a responsive pleading expired. (D.I. 23); *see Yellow Book Sales & Distrib. Co., Inc. v. White*, 2011 WL 830520, at *3 (E.D. Pa. Mar. 10, 2011) (declining to grant relief from an entry of default under Rule 55(c) where defendant provided no reason for his late submission).

Bravo offered no explanation either for its late answer – which was by this Court's express standards, wrongly filed. Bravo must move to vacate its default and with its motion meet the Third Circuit's standards for vacating default:

> 1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; (3) whether the default was the result of the defendant's culpable conduct." *World Ent. Inc. v. Brown*, 487 F. App'x 758, 761 (3d Cir. 2012) (citing *United States v. $55,518.05 in United States Currency,* 728 F.2d 192, 195 (3d Cir.1984) and finding District Court properly considered the applicable factors and did not abuse its discretion in denying Defendant's motion to vacate entry of default).

2024 to submit a status conference order, which they did (D.I., 25). Notably, again, there was no mention of Mr. Winton (or co-counsel for Bravo) being unable to carry on in the case because of Mr. Winton's house move. Nor was there any mention of the need for further delay when this Court November 25, 2024 (D.I. 47) ordered Bravo to file 10 days later – November 8, 2024 – the motions it should have filed long before (before its October 21, 2024 Answer – now – 17 days ago.[5]

- It is correct that at Wednesday's conference, Cockett counsel didn't "articulate" a basis for opposing the extension – **but – its not true that Cockett never articulated the basis** – again, please see the emails, **Exhibits A and C hereto**.

**What is true is**, that Bravo counsel never at yesterday's 2:45 p.m. conference asked (probably because it was clear already, or to make a "point" with the Court – but if it was unclear, Bravo counsel should have asked) – again – why Cockett was opposing the extension.

Yesterday's in person (Zoom) conference went exactly like this: "Is Cockett opposing the extension?" "Yes." "Alright, we'll make the motion." Then, Bravo delayed until this (Thursday 7th before the 8th deadline) to make its emergency motion.

---

To show a meritorious defense, a plaintiff must assert defenses that would constitute a complete defense to the action. *Id.* Failure to establish a meritorious defense weighs heavily against setting aside the default. *See id.* at 197 (declining to consider prejudice and culpability when the defendant failed to establish a meritorious defense).

[5] Bravo also mis-quotes Supplemental Admiralty Rule B(3)("Answer"), that:

> (b) By Defendant. The defendant shall serve an answer within 30 days after process has been executed, whether by attachment of property or service on the garnishee.

Cockett served Garnishee Wells Fargo May 31, 2024 (D.I. 12); Cockett requested default against Bravo, July 3, 2024 (D.I. 19), more than 30 days after service on Garnishee Wells Fargo, and, more than 21 days after service of the 21-day summons on Bravo *(see,* Default Request, id., D.I., 19). The timing of Cockett's default request was proper in both respects – Supplemental Rule B, and Fed. R. Civ. P. 4.

**Conclusion**

As Judge Williams writes in *Tonal Sys., Inc. v. iFIT, Inc.*, No. CV 20-1197-GBW, 2022 WL 13944658, at *1 (D. Del. Oct. 24, 2022)(cited by Bravo in its emergency motion, D.I. 48 at 3):

> The Court denies iFIT's Motion because, if iFIT acted with diligence, iFIT could have met the deadline that the Court gave iFIT to replead its pre-suit induced and willful infringement claims.
>
> Rule 6(b)(1)(A) permits a court, "for good cause," to "extend the time" that a party has to complete "an act." Magistrate Judge Burke has previously explained that,
>
>> [i]n order to establish good cause pursuant to Rule 6(b)(1)(A), the moving party must demonstrate that it cannot reasonably meet the court's deadlines despite its diligence. Courts have described Rule 6(b)(1)(A)'s "good cause" standard as non-rigorous and have noted that a request for an extension of time pursuant to the Rule should normally be granted in the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party.
>
> *Davis v. Ace Hardware Corp.*, 2014 WL 2990329, at *2 (D. Del. July 2, 2014) (cleaned up); *see also Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986) (finding that a scheduling order cannot "be disregarded without a specific showing of good cause," which requires, in the summary judgment context, the movant to demonstrate specific "diligent efforts on his or her part and unusual circumstances which have frustrated those efforts"); Adam N. Steinman, Charles Alan Wright & Arthur R. Miller, 4B Federal Practice & Procedure § 1165 (4th ed. 2022) (explaining that such requests "normally will be granted in the absence of bad faith").

Judge Burke also writes:

> In order to establish good cause pursuant to Rule 6(b)(1)(A), the moving party must demonstrate that it cannot reasonably meet the court's deadlines despite its diligence. *See, e.g., Louisiana Counseling & Family Servs., Inc. v. Mt. Fugi Japanese Rest.,* Civil No. 08–6143 (JHR/JS), 2013 WL 1844269, at *3 (D.N.J. May 1, 2013) (citing cases); *see also Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.,* Cause No. 1:12–CV–296, 2013 WL 3779060, at *1 (N.D.Ind. July 18, 2013).

*Davis v. Ace Hardware Corp.,* No. CV 12-1185-SLR-CJB, 2014 WL 2990329, at *2 (D. Del. July 2, 2014).

Bravo has delayed by deception – leading to Cockett's Complaint here.

Bravo admits it owes – and has owed – Cockett a principal amount of $188,587,06 (invoice of $193,587.06, less the $5,000 paid when Cockett confronted Bravo's Chris Brooks in May, 2024) **for over a year.**

Bravo, after its delays by deception, now has retained bankruptcy counsel, now very recently threatening **imminent** bankruptcy.

Bravo's principal, Chris Brooks' stepfather Jim Winton, a very experienced admiralty lawyer retired from (and with the support of a 1000 person law firm), appears months after the June, 2024 complaint service – announces that Bravo will move to vacate the default and maritime attachment – but – instead of filing the required extension motion and/ or motion to vacate with good cause, takes the time to file an improper answer – plainly improper under this Court's decisions.

And now Bravo wants – with Cockett facing being "imminently" a bankruptcy creditor – with Bravo in default for months – further delay for a house move that never was announced **either**, when this Court ordered the November 8th briefing (which Bravo should have filed months ago), or as a parties' conference that this Court ordered October 22nd – or before that.

 Mr. Winton, Chris Brooks' stepfather, entered the case *pro hac vice* representing that he was fully ready to participate (which as a very experienced maritime lawyer backed by a 1,000 lawyer firm, he readily should be able to do and have done) – not disclosing apparently long-before plans to be moving and so, unable to participate, after all.

**Cockett is Prejudiced**:  Delay already has – and will continue to – prejudice Cockett as Bravo's adverse party.

**Bravo Has Not Been Diligent**:  Bravo has not shown that it cannot reasonably meet the court's deadlines despite its diligence - and there has not been diligence – with ignored Rules and this Court's precedent's plain requirement for vacating default entry.

This Court now should deny the extension request.

|  |  |
|---|---|
|  | YOUNG CONAWAY STARGATT & TAYLOR LLP |
| J. Stephen Simms (*pro hac vice*)<br>Simms Showers LLP<br>201 International Circle, Suite 230<br>Baltimore, Maryland 21030<br>Telephone:    (410) 783-5795<br>Facsimile:     (410) 510-1789<br>jssimms@simmsshowers.com | */s/ Timothy Jay Houseal*<br>Timothy Jay Houseal (Del. Bar ID No. 2880)<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>(302) 571-6682<br>thouseal@ycst.com |

*Counsel to Cockett Marine Oil US, Inc.*

Dated: November 7, 2024